# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH DIVISION

| | |
|---|---|
| CHANEY HORTON, Individually and For Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>RIGHT TURN SUPPLY, LLC,<br><br>  Defendant. | **Case No. _____**<br><br>JURY TRIAL DEMANDED<br><br>CLASS AND COLLECTIVE ACTION<br>FED. R. CIV. P. 23 / 29 U.S.C. § 216(b) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Chaney Horton (Horton) brings this Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA) lawsuit to recover unpaid overtime wages and other damages owed by Right Turn Supply, LLC (RTS).

2. Horton worked for RTS as a Mud Engineer.

3. Horton and the other workers like him regularly worked in excess of 40 hours each week.

4. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of paying overtime as required by the FLSA and the PMWA, RTS improperly classified Horton and other similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation.

6. RTS never paid Horton, or the other workers like him, a salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court also has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

11. Horton worked for RTS in this District and Division.

12. Specifically, Horton worked for RTS in and around Pittsburgh, Pennsylvania. Indeed, Horton regularly worked overtime for RTS in and around Pittsburgh, Pennsylvania. Despite regularly working over 40 hours, RTS paid him a day rate with no overtime for the work he did for RTS in and around Pittsburgh, Pennsylvania.

13. RTS conducts substantial business operations in this District and Division.

14. Specifically, RTS hires Mud Engineers, like Horton, to provided services to its clients in and around Pittsburgh, Pennsylvania. RTS also provides supplies, such as drilling fluids, hole openers, mud motors, pipe vacs, screens, pipe wrenches, pipe cradles, bits, pipe rollers, and swivels, to its clients in and around Pittsburgh, Pennsylvania.

## THE PARTIES

15. Horton worked for RTS as a Mud Engineer from approximately December 2017 until August 2019.

16. Throughout his employment with RTS, Horton was paid a day rate with no overtime compensation and was classified as an independent contractor.

17. In fact, Horton was RTS' employee.

18. Horton's consent to be a party plaintiff is attached as Exhibit A.

19. Horton brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by RTS' day rate system.

20. RTS paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA and the PMWA.

21. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of, RTS during the past 3 years who were classified as independent contractors and paid a day rate** (FLSA Class Members)**.**

22. Plaintiff also seeks class certification of such a class under Fed. R. Civ. P. 23 under the PMWA, as follows:

> **All workers employed by, or working on behalf of, RTS during the past 3 years who were classified as independent contracts and paid a day rate in Pennsylvania.** (Pennsylvania Class Members).

23. The FLSA and Pennsylvania Class Members are referred to collectively as the Day Rate Workers.

24. Defendant RTS is a limited liability company that may be served by serving its registered agent: **Timothy Hutton, 1111 North Loop West, Suite 705, Houston, Texas 77008, USA**.

## FLSA COVERAGE

25. At all relevant times, RTS has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

26. At all relevant times, RTS has been part of an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

27. At all relevant times, RTS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA. 29 U.S.C. §

203(s)(1). RTS has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

28. In each of the last 3 years, RTS has had annual gross volume of sales made or business done of at least $1,000,000.

29. At all relevant times, Horton and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

30. RTS treated Horton and the Day Rate Workers as employees and uniformly dictated the pay practices applied to Horton and the Day Rate Workers.

31. RTS's misclassification of Horton and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA or the PMWA.

## FACTS

32. RTS is a consulting company that provides personnel and supplies to oil and gas companies throughout the United States.

33. To complete its business objectives, RTS hires personnel to perform work as mud engineers, staffing them to certain oil and gas companies.

34. RTS does not hire these personnel on a project-by-project basis.

35. Rather, RTS hires and treats these workers like just like regular, even if sometimes short term, employees.

36. RTS pays, and handles payroll, for the personnel it staffs to such oil and gas companies.

37. Many of these individuals worked for RTS on a day rate basis (without overtime pay) and were misclassified as independent contractors.

38. These workers make up the proposed class of Day Rate Workers.

39. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

40. For example, RTS staffed Horton (as a Mud Engineer) to Southeast Directional Drilling.

41. RTS classified its Mud Engineers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

42. RTS did not pay any of its Mud Engineers overtime pay for hours that they worked in excess of 40 in a workweek.

43. For example, Horton worked for RTS as a Mud Engineer from approximately December 2017 until August 2019.

44. Throughout his employment with RTS, he was classified as an independent contractor and paid on a day rate basis.

45. Horton and the Day Rate Workers worked for RTS under its day rate pay scheme.

46. Horton and the Day Rate Workers did not receive a salary.

47. If Horton and the Day Rate Workers did not work, they did not get paid.

48. Horton and the Day Rate Workers received a day rate.

49. But Horton and the Day Rate Workers did not receive overtime pay.

50. This is despite the fact Horton and the Day Rate Workers often worked at least 12 hours a day, for as many as 7 days a week, for weeks at a time.

51. For example, Horton received a day rate of either $600 or $630 for each day he worked for RTS.

52. For the pay period starting on July 29, 2019 and ending on August 4, 2019, RTS paid Horton a day rate of $600:

| 7 | Days on job: $600 | 600.00 | 4,200.00 |
|---|---|---|---|
|   | Dates: 07/29/19-08/04/19 |   |   |

53. Although he worked 7 days, and at least 84 hours, in that week, he did not receive any overtime pay.

54. Similarly, for the pay period beginning on February 5, 2018 and ending on February 10, 2018, RTS paid Horton a day rate of $630:

| 6 | Days on job: $630.00 | 630.00 | 3,780.00 |
|---|---|---|---|
|   | Dates: 02/05/18-02/10/18 |   |   |

55. Although he worked 6 days, and at least 72 hours, in that week, he did not receive any overtime pay.

56. Horton and the Day Rate Workers received the day rate regardless of the number of hours they worked in excess of 40 in a work week.

57. Without the job performed by Horton and the Day Rate Workers, RTS would not be able to complete its business objectives.

58. Horton and the Day Rate Workers relied on RTS for work and compensation.

59. Horton and the Day Rate Workers worked in accordance with the schedule set by RTS and/or its clients.

60. Horton and the Day Rate Workers cannot subcontract out the work they are assigned by RTS.

61. Horton and the Day Rate Workers must follow RTS and/or its clients' policies and procedures.

62. Horton and the Day Rate Workers' work must adhere to the quality standards put in place by RTS and/or its clients.

63. Horton and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

64. Horton and the Day Rate Workers did not possess any specialized or unique skill set.

65. Horton and the Day Rate Workers did not market their services while employed by RTS.

66. Horton and the Day Rate Workers worked exclusively for RTS during the relevant period.

67. Horton and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and/or insurance.

68. RTS and/or its clients set Horton and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working on jobs for RTS.

69. At all relevant times, RTS and/or its clients maintained control, oversight, and direction of Horton and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

70. RTS knew Horton, and other Day Rate Workers, worked more than 40 hours in a week.

71. RTS knew, or showed reckless disregard for whether, the Day Rate Workers were not exempt from the FLSA or the PMWA's overtime provisions.

72. Nonetheless, RTS failed to pay Horton and the other Day Rate Workers overtime.

73. RTS knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and the PMWA.

## FLSA VIOLATIONS

74. Horton brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

75. RTS violated, and is violating, the FLSA by failing to pay Horton and the other Day Rate Workers overtime.

76. RTS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation.

77. RTS's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

78. Accordingly, Horton and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## PMWA Violations

79. Horton brings his claim under the PMWA as a Rule 23 class action.

80. The conduct alleged violates the PMWA.

81. At all relevant times, RTS was subject to the requirements of the PMWA.

82. At all relevant times, RTS employed Horton and the Pennsylvania Class Members as "employees" within the meaning of the PMWA.

83. The PMWA requires employers like Defendants to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week.

84. Horton and the Pennsylvania Class Members are entitled to overtime under the PMWA.

85. RTS has and has had a policy and practice of misclassifying Horton and the Day Rate Workers as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 in a workweek.

86. Horton and the Pennsylvania Class Members seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

87. Horton and the Pennsylvania Class Members also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by RTS, as provided by the PMWA.

## Class and Collective Action Allegations

88. The Day Rate Workers were victimized by RTS' pattern, practice, and/or policy which is in willful violation of the FLSA and the PMWA.

89.     Other Day Rate Workers worked with Horton and indicated they were classified as independent contractors, paid in the same manner (a day rate with no overtime), and performed similar work.

90.     Based on his experiences with RTS, Horton is aware that RTS' illegal practices were imposed on the Day Rate Workers.

91.     The Day Rate Workers were classified as independent contractors and not afforded overtime compensation when they worked in excess of 40 hours in a week.

92.     Horton's experiences are therefore typical of the experiences of the Day Rate Workers.

93.     The specific job titles or precise job locations of the Day Rate Workers do not prevent class or collective treatment.

94.     Horton has no interest contrary to, or in conflict with, the Day Rate Workers. Like each Putative Class Member, Horton has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

95.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96.     Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and RTS will reap the unjust benefits of violating the FLSA and the PMWA.

97.     Furthermore, even if some of the Day Rate Workers could afford individual litigation against RTS, it would be unduly burdensome to the judicial system.

98.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

99.     The questions of law and fact common to the Day Rate Workers predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

  a. Whether RTS employed the Day Rate Workers within the meaning of the applicable state and federal statutes, including the FLSA and the PMWA;

  b. Whether RTS's decision to classify the Day Rate Workers as independent contractors and pay them a day rate was made in good faith;

  c. Whether RTS's decision to not pay time and a half for overtime to the Day Rate Workers was made in good faith;

  d. Whether RTS's violation of the FLSA and the PMWA was willful; and

  e. Whether RTS's illegal pay practices were applied uniformly to all Day Rate Workers.

100. Horton and the Day Rate Workers sustained damages arising out of RTS's illegal and uniform employment policy.

101. Horton knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

102. Even if the issue of damages was somewhat individual in character, there would be no detraction from the common nucleus of liability facts.

## JURY DEMAND

103. Horton demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Horton prays for judgment against RTS as follows:

  a. An Order certifying a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated workers with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order designating the Pennsylvania Class as class action pursuant to Fed. R. Civ. P. 23;

c. For an Order pursuant to Section 16(b) of the FLSA finding RTS liable for unpaid back wages due to Horton and the Day Rate Workers for liquidated damages equal in amount to their unpaid compensation;

d. For an Order appointing Horton and his counsel as Class Counsel to represent the interests of the FLSA and Pennsylvania Classes;

e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    PA ID No. 308410
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Taylor A. Jones**
    Texas Bar No. 24107823
    *(pro hac vice application forthcoming)*
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com

    **AND**

- 12 -

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

**Joshua P. Geist**
PA ID No. 85745
Goodrich & Geist, PC
3634 California Ave.
Pittsburgh, PA 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**