**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| CHANEY HORTON, Individually and For Others Similarly Situated, | **Case No. 2:19-CV-01271-NR** |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | CLASS AND COLLECTIVE ACTION FED. R. CIV. P. 23 / 29 U.S.C. § 216(b) |
| RIGHT TURN SUPPLY, LLC, | |
| Defendant. | |

**BRIEF IN SUPPORT OF**
**AGREED MOTION TO APPROVE SETTLEMENT**

Plaintiff Chaney Horton (Horton) and Defendant Right Turn Supply, LLC (Right Turn) (together, the Parties) have reached a settlement in this matter. The settlement is a reasonable compromise that will adequately compensate Horton for the unpaid overtime alleged and will eliminate the need for the Parties to engage in protracted and expensive litigation.

**1.    Background.**

Horton filed this class and collective action on October 3, 2019. Doc. 1. Horton alleged Right Turn misclassified him and other similarly situated workers as independent contractors and paid them a day-rate with no overtime in violation of the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA). *Id.* Horton further claimed he and the other workers like him were entitled to unpaid back wages, as well as liquidated damages, attorneys' fees, interest, and costs. *Id.*; *see also* 29 U.S.C. § 216.

The Parties hotly contested Horton's allegations. Right Turn maintained that it properly classified Horton and its other workers as independent contractors (as opposed to employees) and that it properly classified and compensated these workers. *See* Doc. 13 at *15, ¶¶ 104-05. Right Turn

further maintained that Horton could not show class or collective treatment under the PMWA or FLSA was appropriate. *Id.* at \*15, ¶ 106. In addition, Right Turn claimed any violation of the PMWA or the FLSA was made in good faith and were not not made willfully and contested the damages claimed by Horton.

Ultimately, the Parties reached the following settlement on behalf of Horton (individually):

| | |
|---|---|
| Gross Settlement Amount: | $30,000.00 |
| Attorneys' Fees: | $11.578.73 |
| Attorneys' Out-of-Pocket Costs: | $1,053.16 |
| Net Settlement Amount to Horton: | $17,368.11 |

As a result of the Parties' agreement, Horton will receive meaningful relief for his claimed overtime hours. The Parties submit the settlement reached is a fair and reasonable result stemming from a *bona fide* dispute concerning the payment of wages to Horton. *See* Exhibit 1, Settlement Agreement and Release (the Agreement).

**2.      Key Settlement Terms.**

The specific terms of the Parties' agreed-upon settlement are set forth in their Agreement. *See id.* The Parties' Agreement obligates Right Turn to pay a Gross Settlement Amount of $30,000.00. If approved, all claims, including claims for attorneys' fees ($11,578.73), which is 35% of the Gross Settlement Amount) and costs ($1,053.16) will be deducted from the Gross Settlement Amount, resulting in a Net Settlement Amount to Horton of $17,368.11. *Id.* at ¶ 2

If approved, Horton will provide Right turn with a limited wage and hour release, which will release Right Turn from all state and federal wage related claims Horton asserted, or could have asserted in this Lawsuit. Specifically, Horton agreed to release Right Turn as follows:

Horton releases the Released Parties[1] from any and all claims, demands, damages, monies, injunctive relief, attorneys' fees, liabilities and/or causes of action of whatever kind or character, whether known or unknown, which Horton has asserted or could have asserted against the Released Parties arising out of or relating in any way to any acts, circumstances, facts, transactions, or omissions based on facts occurring prior to the date Horton signs this Agreement. This release includes all claims (a) made or which could have been made in Horton's Lawsuit, and (b) pertaining to the payment of wages or hours of work under state and federal law, including the Fair Labor Standards Act (29 USC §§ 201 *et seq.*, hereinafter "FLSA") and the Pennsylvania Minimum Wage Act (42 P.S. § 333.104 *et seq.*, hereinafter "PMWA").

## 3.    Argument & Authority.

"Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees[.]" *Adams v. Bayview Asset Mgmt., LLC*, 11 F.Supp.3d 474, 476 (E.D. Pa. 2014). The first is a compromise supervised by the Department of Labor under 29 U.S.C. § 216(c). *Id.* The second is a "district court-approved compromise" under 29 U.S.C. § 216(b). *Id.* The Parties request the Court's approval of their proposed Agreement (Ex. 1).

"When parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F.Supp.2d 464, 466 (E.D. Pa. 2012) (internal quotation marks omitted); *see also Vargas v. Gen. Nutrition Centers, Inc.*, No. 2:10-cv-867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015) (same). The FLSA's provisions "are mandatory and not subject to negotiation and bargaining between employers and employees because allowing waiver by employees or releases of employers would nullify the purposes of the act." *Deitz v. Budget*

---

[1] "Released Parties" means Right Turn and its predecessors, successors, assigns, businesses, affiliates, subsidiaries, divisions, holding companies, parent companies, partnerships, limited partnerships, partners, and any of their officers, directors, trustees, conservators, employees, agents, contractors, representatives, shareholders, stockholders, owners, heirs, devisees, legatees, executors, administrators, insurers, subrogees, and attorneys, and their heirs, devisees, legatees, executors, administrators, assigns, agents, representatives, businesses, insurers, subrogees, and attorneys, and any other persons or entities acting by, through, under, or in concert with any of the persons or entities listed in this subsection. Ex. 1 at ¶ 1(c).

*Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *2 (M.D. Pa. May 29, 2013); *see Lynn's Food Stores, Inc. v. United States Dept. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982) ("Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory[.]").

Thus, "if the Court determines that the settlement concerns a 'bona fide dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Howard v. Philadelphia Hous. Auth.*, 197 F.Supp.3d 773, 777 (E.D. Pa. 2016). When the proposed settlement results from arm's length negotiation between competent counsel, the Court begins with a "strong presumption in favor of finding [the] settlement fair[.]" *Crabtree v. Volkert, Inc.*, No. CIV.A. 11-0529-WS-B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013).

For the reasons set forth herein, the Parties' proposed Agreement represents a fair and reasonable settlement of a *bona fide* FLSA dispute which furthers the aim of implementing the FLSA in the workplace.

## A.    A *Bona Fide* Dispute Exists.

The Court must first determine whether the proposed settlement would resolve a "*bona fide*" dispute under the FLSA. In this context, "[a] dispute is 'bona fide' where it involves factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 530 (E.D. Pa. 2016) (internal quotation marks omitted). The Court must "consider the substantive allegations and determine whether factual issues, specific to these parties, are actually in dispute." *Deitz*, 2013 WL 2338496 at *3. "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus*, 155 F.Supp.3d at 530. In deciding whether the proposed settlement reflects a "reasonable compromise" of a *bona fide* dispute, the Court may

either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement. *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986).

Here, the Parties fiercely contested the claims and defenses asserted. Horton alleged that Right Turn violated the PMWA and the FLSA by misclassifying him as an independent contractor and failing to pay him overtime as required by paying him only a day-rate for each day worked. Doc. 1. Horton contends Right Turn's violations of the FLSA and PMWA exposed Right Turn to substantial liability for back wages, liquidated damages, attorneys' fees, and costs. *Id.*; 29 U.S.C. § 216(b); 43 Pa. State. Ann. § 333.113. These allegations "fall within the contours of the FLSA." *Kraus,* 155 F.Supp.3d at 530; *see* 29 U.S.C. § 207. In contrast, Right Turn contends Horton was properly classified as an independent contractor and was not Right Turn's employee. *See* Doc. 13 at *15, ¶¶ 104-05. Although not specifically pled, Right Turn further claimed that in the event of an adverse finding on employee status, Horton's job duties and compensation qualified him as an exempt employee. The Parties further contested whether Right Turn's classification and pay policy was made in good faith, or whether Right Turn's alleged violations of the FLSA and PMWA were willful. Doc. 1 at ¶¶ 76-77; Doc. 13 at ¶¶ 76-77. Right Turn thus evidenced a clear "intent to reject" Horton's claims. *Kraus,* 155 F.Supp.3d at 530.

As a result, the record establishes that resolution of many of the relevant legal issues would turn on the underlying, disputed facts surrounding, at a minimum, (i) Horton's employment; (ii) Right Turn's pay practices; and (iii) Right Turn's state of mind (*i.e.*, Right Turn's good or bad faith in establishing the challenged pay practices). The Court should thus find the Parties' proposed Agreement resolves a "*bona fide*" dispute of "factual issues rather than legal issues," which placed the ultimate outcome of the litigation in doubt. *See Kraus,* 155 F.Supp.3d at 530. Without the Parties' willingness to engage in settlement discussions, this case would have not been resolved.

**B.    The Settlement is Fair and Reasonable.**

The Court must next assess whether the proposed settlement is fair and reasonable. In most cases, this standard is not exacting. Indeed, "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Mgmt. Co.*, 715 F.Supp.2d 1222, 1227 (M.D. Fla. 2009); *see Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) ("[C]ourts typically regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."). Only "[r]arely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" *Bonetti*, 715 F.Supp.2d at 1227; *see also Austin v. Pennsylvania Dep't of Corr.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

Here, Horton agrees the terms of the Agreement are fair and reasonable and Horton has no objections to the Agreement's proposed terms. *See* Ex. 1. Moreover, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Exhibit 2, Declaration of Andrew W. Dunlap. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Id.*; *see also Austin*, 876 F.Supp at 1472; *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F.Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."). The Parties agree the settlement of $30,000.00 is reasonable. *Id.*; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 787-88 (3d Cir. 1995).

In addition, the Court must review the details of the proposed agreement to ensure that it is fair. In analyzing proposed FLSA settlements, "district courts have relied on the factors set out by the Third Circuit for approving class action settlements pursuant to Federal Rule of Civil Procedure 23." *Brown v. TrueBlue, Inc.*, No. 1:10-CV-00514, 2013 WL 5408575, at *2 (M.D. Pa. Sept. 25, 2013). But

"unlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not negotiating around the clear FLSA requirements via settlement." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (internal quotation marks omitted); *see Bredhenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) ("Unlike a traditional class action under Rule 23, potential class members in an FLSA collective action must affirmatively opt-in to be bound by the judgment. … Their failure to do so does not prevent them from bringing their own suit at a later date.").

Thus, while the factors used to evaluate Rule 23 class action settlements provide a framework for the Court's analysis, rigid application of those factors is neither required nor appropriate in the FLSA context. *See Deitz*, 2013 WL 2338496 at *5 ("Although courts have utilized Fed. R. Civ. P. 23 in evaluating the fairness of a proposed settlement under FLSA collective action suits, the Rule does not control such actions and the Court may use its discretion in fashioning appropriate standards for approving settlement of actions brought under 29 U.S.C. § 216(b).").

The factors the Court may consider include: (i) the complexity, expense, and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of proceedings and amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risk of maintaining the class through trial; (vii) the ability of the defendants to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

### i.    Complexity, Expense, and Likely Duration.

Generally, "[c]ases requiring great expenditures of time, money, and other resources on behalf of the parties and the court" are "good candidates for settlement." *Deitz*, 2013 WL 2338496 at *5. As

a result, the greater the apparent complexity and likely expense associated with litigating a case to its conclusion, the more likely it is that the Court will find a proposed settlement to be fair to employees and the public. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998).

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Although FLSA cases are not novel, FLSA work is a specialized area of law where extra skill is needed to litigate. *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("[W]age and hour collective and class actions are, by their very nature, complicated and time-consuming."). In addition, resolving the procedural issues, the merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013).

Three fundamental questions governed this case: (1) whether Right Turn properly classified Horton as an independent contractor under the FLSA and PMWA; (2) alternatively, whether Horton was an exempt employee under the FLSA or PMWA; and (3) whether such determinations could be made on a class-wide basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA and PMWA.

While the Parties engaged in some informal discovery before reaching an agreement, both Parties would require substantial additional discovery (including, for example, numerous costly depositions and the exchange of electronic discovery) to move forward with this matter on a class or collective basis and to prepare this matter for trial. Continued litigation would result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources. *See Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Indeed, should the Court not approve the Parties' Agreement, additional expensive and time-consuming formal discovery

will occur, and additional litigation will be necessary on issues relating to class and conditional certification, Right Turn's classification practices, and damages. Moreover, the Parties will expend substantial time and energy filing motions for class and conditional certification and dispositive motions relating to the Parties' claims and defenses.

Both Parties maintain their factual and legal positions are viable and they intend to vigorously litigate their positions in the absence of a settlement. The Parties' Agreement, therefore, avoids potentially costly litigation spanning months (or perhaps years) and the Parties clearly benefit from the surety of recovery under the Settlement. Settlement is thus appropriate, and the Court should not needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. *See Deitz*, 2013 WL 2338496 at *5.

### ii.    Reaction of Class to Settlement.

Although Horton initiated this lawsuit as a class and collective action under the PMWA and FLSA, Horton did not move for class or collective certification and opted instead to settle his individual FLSA and PMWA claims with Right Turn. *See* Doc. 1; Ex. 1. Because no class has been certified and Horton does not object to the settlement, this factor favors approval of the settlement.

### iii.    Stage of Proceedings and Amount of Discovery Completed.

The third *Girsh* factor requires the Court to examine the stage of proceedings and amount of discovery completed before settlement, to determine whether the parties have an "adequate appreciation of the merits of the case before negotiating." *In re Prudential Ins. Co.*, 148 F.3d at 319. This requirement ensures that there is "no risk that self-interested counsel is seeking a resolution of the claims on terms that are most beneficial to counsel alone without regard for the interests of the parties." *Deitz*, 2013 WL 2338496 at *6.

Prior to filing Horton's Original Complaint, Horton's Counsel spent substantial time coordinating with and interviewing Horton, investigating the veracity of Horton's allegations,

reviewing Right Turn's business and pay practices, researching the law relating to the analysis of the employee-employer relationship under the FLSA and PMWA in preparing this matter to get to the filing stage, and speaking with Horton about Right Turn's payroll and personnel policies. Ex. 2 at ¶ 13.

The Parties further investigated through informal discovery and exchange documents relating to Horton's work with Right Turn (including documents evidencing personnel information, compensation, and Right Turn's pay policies and practices), as well as documents relating to the scope of the proposed classes at issue. *Id.* This exchange of information, coupled with information from Horton concerning his general work schedule, allowed the Parties to determine Horton's purported losses based on Right Turn's alleged wage and hour violations, as well as provided the Parties with an appreciation of the merits of the case. Additional discovery in this regard would not likely change the outcome of the Parties' Agreement as it relates to Horton's damages.

### iv.    Risks of Establishing Liability and Damages and Maintaining a Class.

The fourth *Girsh* factor requires the Court to "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefit of an immediate, certain settlement." *Deitz,* 2013 WL 2338496 at *6; *In re Prudential Ins. Co.,* 148 F.3d at 319. But "[t]he risk of maintaining the class throughout trial is not applicable" where, as here, "there is no such putative class that may be decertified or modified at any time during the litigation." *Deitz,* 2013 WL 2338496 at *6. Thus, the Court should focus solely on the risks associated with establishing liability and damages.

Prior to reaching a settlement, Horton's Counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Horton's Counsel certainly believes Horton's claims relating to Right Turn's alleged FLSA and PMWA violations are strong and can be proven at trial, a finding of liability is never assured, especially in complex wage and

hour litigation. Even with a strong factual and legal case, Horton faced significant risks in establishing liability and damages.

Horton alleged Right Turn was his employer and that he was not an independent contractor. Doc. 1. Although Horton felt strongly he qualified as an employee under the FLSA and the PMWA, the fact finder easily could have determined Right Turn properly classified him as an independent contractor based on the economic realities of his working relationship with Right Turn or, alternatively, that Horton was an exempt employee. In addition, even assuming Horton proved Right Turn's classification violated the FLSA and PMWA, Horton may not have been able to prove Right Turn's violation was willful, thus negating an entire year's worth of potential damages. Further risks existed as they relate to certification of a class (under both the FLSA and PMWA), summary judgment on the merits, and any appeal. Indeed, substantial risks and uncertainties were present from the outset of the case that made it far from certain any relief would be obtained. Horton thus faced the risk of limited (or even no) recovery even if liability were otherwise successfully established. Right Turn also faced the risk of being held liable to Horton at trial for an amount that would presumably be greater than the $30,000.00 settlement it has agreed to pay. *See Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) ("[A] settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.").

### v.    Right Turn's Ability to Withstand a Greater Judgment.

The fifth *Girsh* factor "considers whether the defendant could withstand a judgment for an amount significantly greater than the proposed settlement." *Deitz*, 2013 WL 2338496 at *7. That said, a defendant's ability or inability to withstand a greater judgment is "irrelevant" when "the record includes no evidence related to the [d]efendant's ability to pay an amount greater than the settlement, nor … any indication that this factored into settlement negotiations." *Id.*; *see, e.g.*, *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 538 (3d Cir. 2004) ("The District Court found that this factor neither

favored nor disfavored settlement because of a lack of evidence in the record about DuPont's ability to pay or whether such a consideration factored into the settlement negotiations. ... We see no error here."). Here, the Parties did not consider Right Turn's ability to pay while negotiating their Agreement and thus this factor is irrelevant.

### vi.    Reasonableness of Settlement.

The Court must broadly assess the "reasonableness" of the settlement by balancing Horton's best possible recovery against the risks of litigation. "Ideally, this assessment should include comparing the value of damages that [the] plaintiffs would likely recover if successful, offset by the risk of not prevailing, with the amount of the proposed settlement." *Deitz*, 2013 WL 2338496 at *7. But where "calculating the 'best possible recovery' for the plaintiffs is exceedingly speculative, the reasonableness of the settlement can be fairly judged by looking at the nature of the settlement itself and taking into consideration the risks of litigation." *Id.*

As discussed above, both Parties face substantial risk if this case were to proceed. Experienced Counsel for both Parties believes the Agreement is fair and reasonable and the Agreement is a result of arm's-length negotiations by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years.

And there is no question the value of the Agreement represents fair value to Horton, who will receive back wages and penalty damages under federal and state wage law without the risk or expense of protracted litigation and trial. This is particularly significant under the circumstances presented herein considering the wavering oil and gas economy and the Parties' fundamental disagreements as to the merits of Horton's claims and the possibility Horton could receive no money at all.

Instead, the Parties' Agreement obligates Right Turn to pay a Gross Settlement Amount of $30,000.00. If approved, all claims, including claims for attorneys' fees ($11,578.73, which is 35% of the Gross Settlement Amount) and costs ($1,053.16) will be deducted from the Gross Settlement

Amount, resulting in a Net Settlement Amount to Horton of $17,368.11. Ex. 1 at ¶ 2. This negotiated amount by competent counsel in an adversarial context is not facially unreasonable. *See Bonetti*, 715 F.Supp.2d at 1227 ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

### C.    The Requested Attorneys' Fees and Costs are Reasonable.

"The Court must also separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." *Lliguichuzhca*, 948 F.Supp.2d at 366; *see In re Chickie's & Pete's Wage & Hour Litig.*, No. CIV.A. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014) ("In FLSA cases, judicial approval of attorneys' fees is necessary to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.").

"Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Kraus*, 155 F.Supp.3d at 533. In determining what constitutes a reasonable percentage fee award, a district court must consider several factors, "many of which are similar to the *Girsh* factors" discussed above. *In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Such factors include: (i) the size of the fund created and the number of beneficiaries; (ii) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel; (iii) the skill and efficiency of the attorneys involved; (iv) the complexity and duration of the litigation; (v) the risk of nonpayment; (vi) the time devoted to the case by plaintiff's counsel; (vii) the awards in similar cases; (viii) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as governmental agencies conducting investigations; (ix) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (x) any innovative terms of the settlement. *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1

(3d Cir. 2000) (identifying factors 1-7); *In re Prudential Ins. Co.*, 148 F.3d at 338-40 (identifying factors 7-10).

These factors "need not be applied in a formulaic way" and "in certain cases, one factor may outweigh the rest.'" *In re AT & T Corp.*, 455 F.3d at 166. Courts in this Circuit also customarily "cross-check the percentage award" derived from these factors "against the 'lodestar' award method, which is normally employed in statutory fee-award cases." *Rouse v. Comcast Corp.,* No. CIV.A. 14-1115, 2015 WL 1725721, at *11 (E.D. Pa. Apr. 15, 2015); *see, e.g. Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) (applying lodestar cross-check of percentage fee award in FLSA collective action); *Brown*, 2013 WL 5408575, at *3 (declining to approve requested attorneys' fees in FLSA case "without any evidence supporting counsel's time calculation and hourly rate.").

### i.    The Size of the Fund Created and the Number of Beneficiaries.

"Generally, the appropriate percentage awarded to class counsel decreases as the size of the fund increases." *Acevedo*, 2017 WL 4354809 at *17; *see Bredbenner*, 2011 WL 1344745 at *19; *Keller v. TD Bank, N.A.,* No. CIV.A. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014); *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001) ("[D]istrict courts setting attorneys' fees in cases involving large settlements must avoid basing their awards on percentages derived from cases where the settlement amounts were much smaller."). This rule of thumb is "premised on the belief that increases in recovery are usually the result of the size of the class and not a result of the efforts of counsel." *Acevedo*, 2017 WL 4354809 at *17.

Here, no class has been certified and the Parties are settling Horton's individual claims under the FLSA and PMWA. As noted, the Parties' Agreement obligates Right Turn to pay a Gross Settlement Amount of $30,000.00. If approved, all claims, including claims for attorneys' fees ($11,578.73, which is 35% of the Gross Settlement Amount) and costs ($1,053.16) will be deducted

from the Gross Settlement Amount, resulting in a Net Settlement Amount to Horton of $17,368.11. Ex. 1 at ¶ 2.

"In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015); *see Acevedo*, 2017 WL 4354809 at *18 ("[C]ourts have approved attorneys' fees in FLSA collective and class action settlement agreements 'from roughly 20-45%' of the settlement fund."). "Where the fees are set as part of negotiations between the parties, there is a greater range of reasonableness for approving attorney's fees." *Lliguichuzhca*, 948 F.Supp.2d at 366. On balance, then, the percentage fee negotiated by the Parties is not unreasonable relative to the "size of the fund created."

### ii.    The Presence of Absence of Objections by Class Members.

For the reasons previously set forth herein in analyzing the *Girsh* factors, this factor favors approval of the requested attorneys' fees and costs for the same reasons.

### iii.    The Skill and Efficiency of the Attorneys Involved.

As previously noted, Horton is represented by Counsel with extensive experience in federal and state wage and hour class and collective actions. Ex. 2 at ¶¶ 2-10. Indeed, lead counsel states that he has served as attorney of record in over 500 "wage and hour" class or collective actions, individual cases, and arbitrations. *Id.* at ¶ 6.

What's more, the outcome obtained by counsel here represents "a significant benefit in the face of the many legal and factual risks posed by litigation." *Bredbenner*, 2011 WL 1344745 at *19. Counsel "undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation." *Arrington v. Optimum Healthcare IT, LLC*, No. CV 17-3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018). To the contrary, the early settlement of

potentially costly litigation is commendable. Considerable judicial time and resources were no doubt conserved by the Parties' resolution of this case before dispositive motions or trial.

### iv.    The Complexity and Duration of the Litigation.

For the reasons previously set forth herein in analyzing the *Girsh* factors, this factor favors approval of the requested attorneys' fees and costs for the same reasons.

### v.    The Risk of Nonpayment.

Counsel represented Horton on a contingent basis and invested considerable time and resources litigating this case and negotiating with Right Turn, all with no guarantee of recovery, which favors approving the fee award. *See, e.g.*, *Brumley*, 2012 WL 1019337 at *11 ("The Court also finds that Plaintiffs' counsel risked non-payment during the period of their representation since they represented Plaintiffs entirely on a contingent basis … Given these considerations, the Court finds that the risk of non-payment weighs in favor of the requested fee.").

### vi.    The Time Devoted to the Case by Horton's Counsel.

If and when approval is obtained, Horton's Counsel and their staff will have spent at least 35 hours investigating, litigating and bringing this case to a successful settlement and resolution. Ex. 2 at ¶¶ 14 and 17. (noting Andrew Dunlap spent 7 hours, Joshua Geist spent 1 hour, Lindsay Itkin spent 7 hours, William Liles spent 2 hours, Taylor Jones spent 15 hours, and staff members spent 2 hours litigating and bringing this case to resolution). Applying a rate of $650.00 per hour for attorney Joshua Geist, $450 per hour for attorney Andrew Dunlap, $425 per hour for attorney Lindsay Itkin, $400 per hour for attorneys William Liles and Taylor Jones, and between $125 and $140 per hour for experienced legal assistants), yields an attorney's fee lodestar of $13,840.00. *Id.*

The number of hours expended on this case are reasonable given that the litigation has been hotly contested since the outset. Specifically, Counsel's efforts prosecuting this case include:

- Prior to filing Horton's Original Complaint, Horton's Counsel spent substantial time coordinating with and interviewing Horton, investigating the veracity of Horton's allegations, reviewing Right Turn's business and pay practices, researching the law in preparing this matter to get to the filing stage, and speaking with Horton about Right Turn's payroll and personnel policies. *Id.* at ¶ 12.

- The Parties further investigated through informal discovery and the exchange of documents the scope of the damages at issue. *Id.* at ¶ 13. Such investigations included the exchange of class data and computation of damages to create a damage model for the Parties' informal on-going negotiations. *Id.*

- Plaintiff's Counsel spent considerable time reaching out to Right Turn and its Counsel to obtain a responsive pleading and to conduct a Rule 26 conference. *Id.* Indeed, Plaintiff's Counsel ultimately was forced to draft a Motion for Status Conference. *See* Doc. 9.

- Plaintiff's Counsel also spent time investigating Right Turn's claims in its Answer, especially the claims related to discussions with the putative class members. Specifically, Plaintiff's Counsel reached out to a client that was currently working for Right Turn to verify the same. *See* Doc. 35. Ultimately, Plaintiff's Counsel was forced to expend time researching and drafting a Motion for Protective Order and for Corrective Notice, including drafting the proposed corrective notice. *See* Doc. 30; *see also* Ex. 2 at ¶ 13.

- In addition to Plaintiff's Counsel's numerous conferences with Right Turn's counsel related to the case, damages, scheduling a mediation and ultimately, resolution, Plaintiff's Counsel prepared for and attended two rescheduled scheduling conferences. Ex. 2 at ¶ 13.

17

- Further, Plaintiff's Counsel's staff expended time both developing a damages model, handling all filings, and corresponding with Plaintiff. *Id.*

- And since the Parties' reached a settlement, Horton's Counsel has spent significant time and effort in getting the Parties' agreed settlement approved.

With that said, focusing on the total time and labor Horton's Counsel expended, without considering the outcome obtained, is unnecessary, arbitrary, and potentially counterproductive. *See In re Synthroid Mktg. Litig.,* 325 F.3d 974, 979–980 (7th Cir. 2003) ("The client cares about the outcome alone" and Class Counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced."); *In re Comdisco Sec. Litig.,* 150 F.Supp.2d 943, 948 n. 10 (N.D. Ill. 2001) ("To view the matter through the lens of free market principles, [lodestar analysis] (with or without a multiplier) is truly unjustified as a matter of logical analysis."); *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers,* 155 U .PA.L.REV.103 (Nov. 2006). Indeed, "[t]he degree of success a plaintiff enjoys is a critical factor in determining the amount of fees to be awarded." *Dalal v. Alliant Techsystems, Inc.,* 927 F.Supp. 1374, 1381 (D.Colo. 1996) *aff'd,* 182 F.3d 757 (10th Cir. 1999); *see also Singer v. City of Waco, Tex.,* 324 F.3d 813, 829 (5th Cir. 2003) (noting "the most critical factor in determining a fee award is the degree of success obtained").

### vii.    The Awards in FLSA Cases.

As discussed above, courts in the Third Circuit have approved FLSA settlements providing for fee awards of 20-45%. *See, e.g.,* *Mabry,* 2015 WL 5025810 at *4; *Acevedo,* 2017 WL 4354809 at *18. And courts have consistently approved percentages above 30% in FLSA actions. *See, e.g.,* *Rouse,* 2015 WL 1725721(35% of $453,900.00 settlement); *Devlin,* 2016 WL 7178338 (33.3% of $1.55 million settlement); *Erie Cty. Retirees Ass'n,* 192 F.Supp.2d 369 (38% of $350,000.00 settlement).

###### viii.    The Value of Benefits Attributable to Horton's Counsel.

All benefits obtained by Hourton through the proposed settlement can be attributed to the efforts of his counsel, rather than to government agencies or other groups. Most notably, "[t]here is no indication that the [Department of Labor] was investigating the defendant's overtime compensation practices[.]" *Acevedo*, No. CV 3:13-2529, 2017 WL 4354809, at *19. As a result, "there is nothing to compare," *Id.*, and this factor favors approval.

###### ix.    The Negotiated Percentage Fee Subject to a Private Fee Arrangement.

In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see Craig*, 2013 WL 84928 at *12 ("In this region, '[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation' and thus we have no trouble finding that an award of thirty-two percent (32%) less expenses, which falls at the low end of that range, is consistent with market rates."). A percentage fee of 35% falls right in the middle of this range, and so this factor favors approval.

###### x.    Any Innovative Terms of the Settlement.

There are no unusual or innovative terms in the Parties' Agreement. As a result, this factor favors approval.

###### xi.    The Results of a Lodestar Cross-Check Favor Approval.

The Third Circuit has "suggested it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005); *Brumley,* 2012 WL 1019337; *In re Chickie's & Pete's,* 2014 WL 911718 at *4 ("In FLSA cases, both the 'lodestar' formula and the percentage-of-recovery method have been used in evaluating the reasonableness of attorneys' fees.").

When conducting a "lodestar" analysis, the Court first calculates a "lodestar" by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp.*, 396 F.3d at 305. Then, the Court must "multiply the lodestar calculation to reflect the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *Rouse*, 2015 WL 1725721 at *14. Finally, the result is compared to the proposed percentage fee award to confirm the reasonableness of that award. "Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Prudential Ins. Co.*, 148 F.3d at 341.

Yet "in determining the lodestar for cross-check purposes, the Court need not engage in a full-blown lodestar inquiry with 'mathematical precision.'" *Rouse*, 2015 WL 1725721 at *14; *In re Rite Aid Corp.*, 396 F.3d at 305 (explaining that, when performing a "cross-check" of a percentage fee award, an "abridged lodestar analysis" is appropriate); *Milliron v. T-Mobile USA, Inc.*, 423 Fed. App'x 131, 136 (3d Cir. 2011) ("[T]he crosscheck is not the primary analysis in this type of case and does not entail 'mathematical precision [ ]or bean-counting.'"). Instead, the Court "should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required" to perform a full lodestar analysis. *In re Rite Aid Corp*, 396 F.3d at 307 n. 16 (quoting *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002)).

Moreover, the Court "does not have to 'review actual billing records' but can 'rel[y] on summaries submitted by the attorneys.'" *Young v. Tri Cty. Sec. Agency, Inc.*, No. CIV.A. 13-5971, 2014 WL 1806881, at *10 (E.D. Pa. May 7, 2014). That said, "[e]ven when used as a cross-check, courts should 'explain how the application of a multiplier is justified by the facts of a particular case.'" *In re Rite Aid Corp.*, 396 F.3d at 306.

To perform the cross-check, "district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." *Id.* Horton's counsel has provided a declaration listing the attorneys and staff who billed time here, along with each team member's position, years of experience, hourly rate, and total hours billed. Ex. 2. Counsel represents that Horton's attorneys and support staff have billed: (i) 1 hour at $650.00 per hour ($650.00); (ii) 7 hours at $450.00 per hour ($3,150.00); (iii) 7 hours at $425.00 per hour ($2,975.00); (iv) 17 hours at $400.00 per hour ($6,800.00); (v) 1 hour at $140.00 per hour ($140.00); and (vi) 1 hour at $125.00 per hour ($125.00). *Id.* Combining these amounts generates a total "lodestar" of $13,840.00.

Comparing this lodestar to the requested fee award of $11,578.73 leads to a multiplier of 0.83. This number is "well within the [1.0 to 4.0] range frequently awarded in common fund cases in this Circuit." *Rouse*, 2015 WL 1725721 at *14; *In re Ikon Office Sols., Inc.*, 194 F.R.D. at 195 ("A multiplier of 2.7 is well within the range of those awarded in similar cases[.]"). This multiplier is also supportable when used as a cross-check because of the risk undertaken by Horton's counsel handling this matter on a contingent basis, the substantial attorney time and resources expended litigating the case and negotiating a settlement, the positive result obtained for Horton, and the public interests advanced by FLSA litigation. *See J/H Real Estate Inc. v. Abramson*, 951 F.Supp. 63, 65 (E.D. Pa. 1996) (describing a fee award "over 2½ times the lodestar" as a "generous but fair premium."); *Rouse*, 2015 WL 1725721 at *13 (approving multiplier of 2.08). Thus, a "lodestar cross-check" confirms that the proposed 35% fee award is fair and reasonable under the circumstances.

### D.    The Requested Costs are Reasonable.

"[C]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014); *see, e.g., Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving reimbursement of costs including (1) "travel

and lodging," (2) "local meetings and transportation," (3) "depositions," (4) "photocopies," (5) "messengers and express services," (6) "telephone and fax," (7) "Lexis/Westlaw legal research," (8) "filing, court and witness fees," (9) "overtime and temp work," (10) "postage," and (11) "the cost of hiring a mediator").

The Parties' proposed Agreement also provides for the payment of out-of-pocket costs incurred by Horton's Counsel not to exceed $1,053.16. These costs are the costs incurred by Horton's Counsel to-date and include reasonable costs for filing fees, travel expenses, copying, and legal research. Ex. 2 at ¶ 18. Horton's Counsel has maintained, and offers to allow the Court to inspect, documentation reflecting these costs. *Id.* The reported costs are reasonable given the hours worked by Horton's Counsel to-date, and the Parties' proposed Agreement appropriately limits counsel's recovery to actual costs incurred.

4.    **Conclusion.**

For the reasons set forth herein, the Parties' proposed Agreement, including its provisions concerning attorneys' fees and costs, is a fair and reasonable resolution of a bona fide dispute under the FLSA (and PMWA). The Parties therefore request that the Court approve their proposed Agreement in its entirety and dismiss Horton's claims with prejudice.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    **Michael A. Josephson**
    PA ID No. 308410
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Taylor A. Jones**
    Texas Bar No. 24107823
    (*admitted pro hac vice*)
    **JOSEPHSON DUNLAP, LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com

22

adunlap@mybackwages.com
tjones@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

**Joshua P. Geist**
PA ID No. 85745
Goodrich & Geist, PC
3634 California Ave.
Pittsburgh, PA 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

On March 20, 2020 I served the foregoing document on all parties and/or their counsel of record via this Court CM/ECF filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to the Parties' Settlement Agreement, Ex. 1, Right Turn Supply is not opposed to the relief requested herein.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**