IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHANEY HORTON, *individually and for others similarly situated*, | )<br>)<br>) |
| Plaintiffs, | ) 2:19-CV-1271-NR<br>)<br>) |
| vs. | )<br>) |
| RIGHT TURN SUPPLY, LLC, | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

    This is a putative FLSA collective action and PMWA class action. The gist of the case is that Defendant Right Turn Supply allegedly misclassified its independent contractors—they were really, in practice, employees and so should have (but were not) paid overtime, as required by the FLSA and PMWA. The named plaintiff, Chaney Horton, is one of those alleged employees.

    The parties have settled their case on an individual basis, for a total amount of $30,000.00. Under their settlement agreement, Mr. Horton will receive about $17,000.00 and his counsel will receive about $13,000.00 to cover their fees and costs. In exchange, Mr. Horton will release all FLSA and PMWA claims against Right Turn. The settlement does not purport to release the claims of any other Right Turn employee or contractor.

    The parties, as is customarily done in FLSA cases, have moved this Court to approve their settlement. Such motions typically offer (and thus elicit from the courts) lengthy analyses of various fairness factors, often using the class-action fairness factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) as a guide. Indeed, this Court has itself recently engaged in such an analysis.

*See generally Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007, 2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) (Ranjan, J.).

But the Court isn't so sure its approval is needed here. This case isn't being settled on a classwide or collective basis. And a circuit split exists on the question of whether judicial approval of FLSA settlements is required in at least some circumstances. *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) ("There is a circuit split on whether to extend older Supreme Court cases so as to require judicial approval of *all* FLSA settlements. . . . [T]hose cases left open the question of whether the FLSA requires judicial approval to settle bona fide disputes over hours worked or wages owed."); *compare Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 257 (5th Cir. 2012) (enforcing FLSA settlement entered without judicial or Department of Labor approval) *with Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (requiring approval of FLSA settlement); *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (same); *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013) (same); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (same); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (same); *see also Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) ("For example, under the FLSA, a labor standards law, there is a judicial prohibition against the unsupervised waiver or settlement of claims."), *superseded on other grounds by regulation*, 29 C.F.R. § 825.220(d).

The Third Circuit, which is this Court's lodestar, has never weighed in on this issue. At the same time, district courts across the country have increasingly begun to "question whether settlements of 'collective action' claims should require court approval, or whether they should be treated as would a settlement in any other action with multiple plaintiffs." *Oldershaw v.*

*DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1116 (D. Colo. 2017); s*ee also Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 402 (S.D.N.Y. 2017) (holding that no approval is required for pre-suit FLSA settlements); *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) ("[P]arties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due.").

Indeed, despite the majority of courts assuming such approval is required, "nothing in the text of the FLSA expressly requires court review and approval of settlements." *Fails v. Pathway Leasing LLC*, No. 18-CV-00308, 2018 WL 6046428, at *2 (D. Colo. Nov. 19, 2018) (cleaned up). Instead, the requirement is "rooted in an 11th Circuit decision" that "was driven by its facts" and thus arguably "pertains specifically to the settlement of what did not amount to a *bona fide* dispute." *Id.* (discussing *Lynn's Food Stores*, 679 F.2d at 1353); *see also Martinez*, 361 F. Supp. 2d at 628 ("The strict reading of the FLSA [in *Lynn's Food*] was reasoned largely upon the facts in the case."); *Gaughan*, 261 F. Supp. 3d at 400 ("The Eleventh Circuit based that decision on its conclusion that the terms of the settlement agreement reflected an abuse of bargaining power, and that the unrepresented plaintiffs appeared to have been largely unaware at the time of the agreement that they possessed rights under the FLSA.").

Further complicating things, there is growing division in the courts over whether certain components of an FLSA settlement warrant judicial approval. The Eighth Circuit held last year that district courts have no authority to assess the fairness of an attorneys' fee component of a settlement, in a non-class/non-collective FLSA case. *See Barbee*, 927 F.3d. 1024 at 1027; *but see Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) ("The obligation [to review FLSA settlements] extends to the reasonableness of attorneys' fees and

costs."). And the Second Circuit held last year that Rule 68 judgments of FLSA claims are not subject to approval. *See Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 414 (2d Cir. 2019).

That said, in order to provide the parties comfort, the Court will consider their motion for approval of the settlement. *See Slaughter v. Sykes Enter., Inc.*, No. 17-CV-02038, 2019 WL 529512, at *6 (D. Colo. Feb. 11, 2019) ("[W]hile there is disagreement over whether FLSA settlements *must* be approved by the Court, there does not appear to be disagreement at this time over whether FLSA settlements *may* be approved by the Court.") (emphasis in original).

## I. The criteria for approving single-party, non-collective FLSA settlements are narrow.

Upon consideration, the Court will grant the motion, but with three important caveats that concern the legal standards that the Court applies in approving the settlement.

First, in determining whether the settlement in this case is fair and reasonable, the parties argue that the most important factor is whether they have been represented by competent counsel. *See Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class."). The Court disagrees, in part.

It is important that ***a plaintiff*** have competent counsel, because the Court is tasked with evaluating the fairness of the settlement from the plaintiff's perspective, to "ensur[e] that an employer does not take advantage of its employees in settling their claim for wages." *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *2 (M.D. Pa. May 29,

2013). But it's irrelevant whether ***the defendant*** is represented by competent counsel. That distinction is significant here, for reasons discussed below.

Second, in determining whether the settlement is fair and reasonable, the *Girsh* factors are unhelpful. *See Girsh*, 521 F.2d 153.[1] These factors guide courts in this Circuit when evaluating the fairness of a class settlement. But many of those factors are less applicable in evaluating the reasonableness of a single-plaintiff settlement, particularly with a relatively low dollar value.

Experienced plaintiffs' counsel, as here, wear both belt and suspenders to ensure judicial approval, and thus typically spend a lot of briefing energy in going through the *Girsh* factors. Courts oftentimes do the same in their opinions. But "rigid application of those factors is neither required nor appropriate in the FLSA context," *Kapolka*, 2019 WL 5394751, at *3, and the Court believes that that is not a useful exercise in a case like this. *See Deitz*, 2013 WL 2338496, at *5 ("Although courts have utilized Fed. R. Civ. P. 23 in evaluating the fairness of a proposed settlement under FLSA collective action suits, the Rule does not control such actions and the Court may use its discretion in fashioning appropriate standards for approving settlement of actions brought under 29 U.S.C. § 216(b).") (citation omitted).

Instead, what is largely case dispositive on the question of reasonableness is a simple cost-benefit analysis. First, what are the

---

[1] The nine *Girsh* factors are: (1) the complexity, expense, and likely duration of litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risk of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. *See Kapolka*, 2019 WL 5394751, at *4.

anticipated costs of continuing to litigate the case? And, second, what are the plaintiff's damages weighed against his likelihood of success? That's it. That is what drives settlement of most commercial disputes, and thus it should be the focus of a court's analysis in this context. *Girsh* touches on the cost-benefit analysis indirectly, but there is no need to follow each *Girsh* factor chapter and verse for small, non-collective settlements of FLSA cases.

Third, the Court does not believe it has authority to review the attorneys' fees component of this private, non-class settlement. The Court is guided by the recent decision from the Eighth Circuit in *Barbee*, which analyzed the statutory language of the FLSA and concluded that a settlement of attorneys' fees that is separate from a settlement of an FLSA claim is not subject to review. *See Barbee*, 927 F.3d at 1027 ("The statute speaks of allowing fees 'in addition to any judgment awarded,' treating the merits of an FLSA claim and the attorney fees as distinct . . . As a result, any court judgment on the settled merits would necessarily be separate from any court review of the settled attorney fees . . . Thus, regardless of whether we read the statute as requiring approval for FLSA settlements, we do not read it as requiring approval of settled attorney fees.").

This reading of the statute makes a lot of sense particularly in a non-class setting. Courts are used to scrutinizing attorneys' fees in classwide settlements because of what behavioral economists have long referred to as the "principal-agent problem." That problem is the divide between missing class members (the principals), and their agents (class counsel), and the risks that the missing class members end up obtaining small benefits from a settlement compared to a large windfall reaped by class counsel. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005) ("The determination of attorneys' fees in class action settlements is fraught with the potential for a conflict of

interest between the class and class counsel."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 255 (3d Cir. 2001) ("[T]here is often a conflict between the economic interests of clients and their lawyers, and this fact creates reason to fear that class counsel will be highly imperfect agents for the class.").[2]  This is particularly problematic in common-fund cases, where the class counsel eats a "piece of the pie" that it shares with class members.  Because of high agency costs in such a scenario, courts have been tasked with reviewing classwide settlements.  But the principal-agent problem is of less concern (indeed, perhaps of no concern at all) in a private-party settlement.  The settling plaintiff—here Mr. Horton—can certainly monitor his counsel and direct and oversee his lawyers in a way absent putative class members cannot.[3]

---

[2] *See* John C. Coffee, Jr., *The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action*, 54 U. CHI. L. REV. 877, 884 (1987) ("The members of the plaintiff class usually have very little capacity to monitor their agents. [The] information costs tend to be higher because the critical decisions in litigation typically have lower visibility and require greater expertise to understand…."); *but see* Myriam Gilles & Gary B. Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. PA. L. REV. 103 (2006) (criticizing agency-cost concerns as ignoring the more fundamental purpose of class actions—*i.e.*, forcing defendants to internalize social costs).

[3] There is a robust debate over whether high agency costs exist in a pure opt-in FLSA collective action.  Some scholars have argued that the opt-in process of FLSA collective actions mitigates agency costs.  *See* Scott A. Moss, Nantiya Ruan, *The Second-Class Class Action: How Courts Thwart Wage Rights by Misapplying Class Action Rules*, 61 AM. U. L. REV. 523, 559 (2012) ("§ 216(b) actions do not feature the agency problem of class counsel selling out unaware members, which is the rationale for such safeguards in class actions.").  Others have concluded that opting in doesn't empirically reduce agency costs.  *See* Charlotte S. Alexander, *Would an Opt in Requirement Fix the Class Action Settlement? Evidence from the Fair Labor Standards Act*, 80 MISS. L.J. 443, 479 (2010) ("In short, there is nothing to suggest that the mere act of opting in solves the agency problem or otherwise produces more effective, or less costly,

## II.   The Court approves the settlement as being fair and reasonable, but Plaintiff's counsel's fees require no judicial approval.

With the above points of clarification, the Court approves the settlement here for the following reasons.

As a threshold matter, Mr. Horton is represented by competent counsel. When a proposed settlement "results from arm's length negotiation between competent counsel, the Court begins with a strong presumption in favor of finding the settlement fair[.]" *Kapolka*, 2019 WL 5394751, at *2 (cleaned up). Mr. Horton's counsel have litigated numerous FLSA actions. And while this case is in its relative infancy, Mr. Horton's counsel have thus far conducted themselves professionally, demonstrated deep knowledge of wage-and-hour law, and have been diligent and responsive to the Court's orders. Additionally, because this case has settled on a non-class basis, there is no incongruity between Mr. Horton's personal interests and the interests of his counsel.

Of course, the Court could not in good faith make a similar finding regarding Right Turn's counsel, at least in this case, given the Court's imposition of sanctions and the conduct detailed in the Court's prior orders. [ECF 41; ECF 37; ECF 23]. There is also no evidence in the record regarding defense counsel's experience litigating FLSA or other class-action cases. But as discussed above, the Court gives no weight to the competence of defense counsel in its analysis. The task when evaluating an FLSA settlement is to assess reasonableness from the plaintiff-employee's perspective and "ensur[e] that an employer does not take advantage of its employees in settling their claim for wages." *Deitz*, 2013 WL 2338496, at *2.

---

monitoring."). In the end, it may depend on the nature of the collective action, including whether the employees are sophisticated or stand to recover more in back wages, such that they have the ability and incentive to monitor their lawyers.

Because the Court finds that Mr. Horton's counsel is competent and experienced, it starts with the presumption that the settlement here is fair.

Next, under a simple cost-benefit analysis, the Court finds that the settlement is reasonable. As noted above, there are two simple questions that drive this analysis: (1) what are the damages weighed against chances of recovery?; and (2) what are the costs of additional litigation? Here, by his own count, Mr. Horton's damages (his unpaid overtime) equal $16,665.00. [ECF 47 at p. 2]. Under the settlement, Mr. Horton would receive $17,368.11 after deduction of attorneys' fees. [*Id.*]. This equals 104.22% of his own unpaid overtime estimate. [*Id.*].

On the flip side, the costs of continued litigation are potentially significant. "Generally, cases requiring great expenditures of time, money, and other resources on behalf of the parties and the court are good candidates for settlement." *Kapolka*, 2019 WL 5394751, at *4 (cleaned up). As mentioned, this case is in its early days—no depositions have been conducted. Such discovery could be even more prolonged than usual given the ongoing public health crisis related to COVID-19. And if the Court rejects the settlement, the parties still have motions for class certification, motions for summary judgment, and pre-trial motions to look forward to before this case reaches trial. Moreover, given the Herculean effort that was required to secure defense counsel's attendance at routine telephonic case management conferences and participation in the completion of a form ADR stipulation, *see* [ECF 41; ECF 37; ECF 23], the Court is not optimistic that this case would move forward with any particular efficiency. Settling this case now will conserve substantial time, expense, and judicial resources.

Thus, based on a cost-benefit analysis, the costs here of additional work are high and there is no further benefit to Mr. Horton in not settling—he is getting over 100% of his damages as part of the settlement.

Finally, the Court finds that it lacks the authority to scrutinize the attorneys' fees component of the parties' settlement. The parties separately negotiated the attorneys' fee settlement, with Mr. Horton's counsel agreeing to an amount that was a 15% discount from its lodestar amount. [ECF 47 at p. 4]. As the Eighth Circuit has held, under such circumstances, a district court lacks any statutory authority to review such an attorneys' fee settlement. *See Barbee*, 927 F.3d. at 1027 ("When the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement.").

And without any statutory mandate, there is otherwise no sound reason for this Court to judge the attorneys' fees. This is not a classwide settlement, and thus no principal-agent problems exist. Mr. Horton's counsel are accountable directly to him. Put differently, Mr. Horton is well positioned (indeed, even better positioned than this Court) to monitor his own lawyers' work and their bills.[4]

On balance, then, the relevant factors weigh conclusively in favor of approving the settlement. Mr. Horton has been represented by competent counsel. The costs of continued litigation are high. The benefits Mr. Horton

---

[4] Because this is not a collective-action settlement, this Court will not opine on whether it has the authority under the FLSA to review the reasonableness of attorneys' fees submitted in connection with such a settlement. That said, in many such cases, FLSA collective-action claims are settled along with classwide state-law claims, and thus the Court would be required to review class counsel's fees under Rule 23(e).

will receive under the settlement are substantial—he will receive all the wages he alleges he is owed, and then some. In the Court's view, this ends the inquiry. The settlement is therefore approved.

A corresponding order follows.

Date: April 23, 2020            BY THE COURT:

                                *s/ J. Nicholas Ranjan*
                                United States District Judge